Delois **FAULKNER**, as Trustee of the DeLois J. Faulkner Trust and as Trustee of the Stanley J. Boydston Trust, Barbara Taylor, Josephine B. Smith, Douglas Lawson, as Trustee of the Douglas M. Lawson Associates, Inc., Profit Sharing Plan and Trust, and Michael Bolger as Trustee of the MD 1998 Irrevocable Trust, Plaintiffs–Appellants,

v.

Andrew E. **BEER**, Nustar.com, Inc., Susan Callister Beer, and J. Stephen Anderson, Defendants–Appellees,

Kevin Matthews, Jack R. Orben, Harry Connaro, Defendants.

Docket No. 05–1568–CV.

United States Court of Appeals, Second Circuit.

Argued: Jan. 10, 2006.

Decided: Sept. 8, 2006.

Norman Solovay, (Debra I. Resnick, Anthony J. Palumbo, on the brief), Hartman & Craven LLP, New York, NY, for Plaintiffs–Appellants.

Paul T. Shoemaker, Greenfield, Stein & Senior, LLP, New York, NY, for Defendants–Appellees.

Before WINTER, CABRANES, and SACK, Circuit Judges.

WINTER, Circuit Judge.

This is an appeal from Judge Daniels' dismissal of a complaint alleging securities fraud. Because the court considered materials outside the complaint that involved disputed issues of material fact, we vacate and remand.

## BACKGROUND

■ We view the facts alleged in the complaint in the light most favorable to appellants. See *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir.2005), cert. granted on other grounds, —— U.S. ——, 126 S.Ct. 2965, —— L.Ed.2d —— (2006).

The appellants are DeLois Faulkner, as trustee of the DeLois J. Faulkner Trust and the Stanley J. Boydston Trust, Josephine B. Smith, Douglas M. Lawson as trustee of the Douglas M. Lawson Associates, Inc., Profit Sharing Plan and Trust, and Michael Bolger, as Trustee of the MD 1998 Irrevocable Trust. The appellees are Andrew Beer, Nustar.com ("Nustar"), Susan Callister Beer, and J. Stephen Anderson.

Andrew Beer was an investment advisor; he and Jack Orben were the principals and managers of AFS Group and its subsidiary, Starwood Corporation. In the early 1990s, Beer formed several investment vehicles, including Nustar, which was to apply the Berkshire Hathaway investment model to technology companies. He served as Nustar's Chairman, President, CEO and Treasurer at various times; Orben was the Chairman until 1995. The remaining appellees were employees of Nustar: Susan Callister Beer was its President and Treasurer, and J. Stephen Anderson was the Secretary of Nustar and the President of another subsidiary.

Beginning in 1993, appellants were clients of Starwood Corporation. Beer persuaded them to invest in Nustar, some on behalf of trusts they administered. At least one appellant was not given audited financial statements for Nustar or an offering memorandum. Appellants all assert that none of the promotional material they were given included adequate cautions or disclaimers and that Beer assured them Nustar was a safer investment than the conservative stocks and bonds they had held. The promotional materials quoted in the complaint predicted an annual return rate of 42% almost immediately on investments in Nustar, and an eventual 100–fold return. Further, the materials stated that "Nustar has been designed to be an ideal investment vehicle: safe and sound based on investments in quality growth stocks; while management endeavors to develop businesses of high growth which require little or no investment."

Appellants allege several specific oral and written misrepresentations by Beer regarding Nustar before they invested. First, they assert that the 1996 Offering Promotion and later documents falsely stated that a "symbiotic relationship" between Nustar and Starwood would allow Nustar to use Starwood's office staff, equipment, and research and development, keeping overhead low, when in fact Nustar bought Starwood in 1998 and thereby assumed all of the overhead expenses itself. Second, appellants assert that Beer told them that Nustar would invest 75% of the funds raised in "a diversified portfolio of quality growth stocks," while only the other 25% would be invested in those with "extraordinary growth potential," a strategy soon abandoned, if it was ever followed. Third, they assert that Nustar's net asset value was grossly overstated. Fourth, appellants assert that they were told that Nustar would invest in non-public companies whose "capital expenditures are not

overwhelming" and those companies "requiring little or no capital," but that Nustar did not do so. Fifth, they assert that the financial statements were inaccurate, and expenses, losses and uncollectible loans were improperly capitalized and the net asset value overstated. Sixth, they assert that they were told that potential dilution of investors in an offering would be between twelve and fifteen percent, while plaintiff Lawson's investment was diluted by more than 75%. Seventh, appellants assert that they were told that investors could redeem their shares at any time for liquid net asset value, but that Nustar repudiated that agreement after the stock market declined, likening the decline to an act of God or nature. Finally, they allege they were not told that the company managing Nustar, Venvestec, was closely held by the defendants and had no debt or equity capital, nor were they informed that several of the investments made by Nustar were in companies closely held by the defendants which also lacked debt and equity capital. Appellants claim that those investments were made to shift money to the appellees, and that doing so reduced the net asset value of Nustar. They assert that they were unable to redeem their shares, and that their investments are now worthless.

The amended complaint includes claims for: (i) violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b–5; (ii) fraudulent misrepresentations; (iii) breach of fiduciary duty by directors; (iv) negligent misrepresentation; (v) breach of contract; and (vi) breach of fiduciary duty by Beer as an investment advisor. It sought damages equal to their losses, plus punitive damages of $5,000,000 and attorneys' fees.

Defendants moved to dismiss the complaint under Rule 12(b)(6) for, *inter alia,* failure to state a claim; under Rule 9(b) for failure to plead fraud or scienter with particularity, and under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u–4(b)(1)), for failure to plead with particularity.

The district court dismissed the complaint, holding that plaintiffs did not plead with particularity facts sufficient to allege fraud and that some of the alleged misrepresentations were accompanied by cautionary statements in the memorandum sufficient to satisfy the "bespeaks caution" doctrine. See *P. Stolz Family P'ship L.P. v. Daum,* 355 F.3d 92, 96–97 (2d Cir.2004). The court also held that plaintiffs did not plead facts sufficient to show scienter under Rule 9(b); and that Matthews was not alleged to have made any misrepresentation to plaintiffs and should be dismissed as a defendant. Having disposed of the federal claims, the district court dismissed the remaining state law claims without prejudice. See 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction over a claim" when the "court has dismissed all claims over which it has original jurisdiction.").

Appellants then brought this appeal.

## DISCUSSION

We review the district court's dismissal of a complaint for failure to state a claim *de novo,* "accepting as true all facts alleged in the complaint and drawing all inferences in favor of the plaintiff," affirming such a dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 425 F.3d at 106 (citations and internal quotation marks omitted). We also review a dismissal for failure to plead with particularity as required by Rule 9(b) *de novo,*

*Stevelman v. Alias Research Inc.*, 174 F.3d 79, 83 (2d Cir.1999), as we do a dismissal for a failure to state a claim under the PSLRA, *Novak v. Kasaks*, 216 F.3d 300, 305 (2d Cir.2000).

■ Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself. However, "[i]f, on a motion [for dismissal under Rule 12(b)(6) ], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). In the present case, the parties submitted several documents in connection with the defendants' motion to dismiss the amended complaint, including offering memoranda, annual reports and a prospectus.[1] Based in part on those materials, the district court dismissed the complaint.

■ Consideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996) (permissible to consider full text of documents partially quoted in complaint); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (contract between parties "integral" to complaint alleging breach and may be considered on a motion to dismiss); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) (permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint).

■ However, before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. *See, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document. The present record does not satisfy these conditions.

The district court relied on a variety of documents, including the Offering Memoranda, Annual Reports, and a Prospectus, in deciding to dismiss the complaint.[2] However, the court conducted no analysis of which plaintiffs had received which documents either before or after they invested, though none of the plaintiffs appears to have claimed to have received all of the

---

1. Plaintiffs also introduced, *inter alia*, declarations of plaintiffs Smith and Lawson and an affidavit of defendant Orben that touch on the merits of the action. It is not clear, however, the extent to which, if at all, the district court relied on the declarations of Smith and Lawson and the declaration of Orben; it would have been error for the district court to have dismissed the amended complaint on the basis of these documents, rather than on the basis of the amended complaint. *See, e.g., Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir.2000) (error to rely on "factual contention ... contained in a declaration"); cf. *Global Network Commc'ns, Inc. v. City of New York*,

458 F.3d 150, 2006 WL 2106632, at *5 (2d Cir. July 21, 2006) (a court may rely on material extraneous to the complaint if the material was integral to the complaint and relied on by the plaintiff in drafting the complaint); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (same).

2. The complaint also refers to several documents not included in the appendix submitted to this court, possibly indicating that they were not considered in full text by the district court.

documents attached to the complaint. For example, although the district court relied heavily on the cautionary language of the Offering Memoranda dated July 20, 1999 and April 1, 2000, the complaint states that, except for Lawson, all of the plaintiffs invested before either of the Offering Memoranda was issued. Only the complaint's description of Lawson's investment asserts that he received either of the Offering Memoranda. The amended complaint does not mention any other plaintiff receiving an offering memorandum or deciding to invest in Nustar in reliance on it.[3] It is not clear whether the other plaintiffs had or had not relied on either of the Offering Memoranda in making or maintaining their investments. Dismissal under Rule 12(b)(6) critically depends on whether specific plaintiffs had invested before the issuance of the Offering Memoranda, Annual Reports and Prospectus. For example, if a plaintiff had not received a copy of either Offering Memorandum, then that plaintiff's claims could not be dismissed based on warnings of risk in those documents.

The factual problems are not limited to which plaintiffs received the Offering Memoranda; the same difficulties exist regarding which plaintiffs received which Annual Reports and which received the Prospectus. The district court appears to have assumed that all plaintiffs had received all of the documents attached to the complaint. However, the terms of the complaint itself clearly put that factual assumption in dispute.

Moreover, at oral argument defendants added to the chaos by raising yet other documents to fill in various gaps. Wheth-

er those documents were considered by the district court or are even in the record was left uncertain.

## CONCLUSION

We therefore vacate the district court's dismissal and remand for further proceedings. Nothing we say here intimates any view on the merits, whether the complaint might or might not properly be dismissed on the ground that the plaintiffs did not plead with particularity facts sufficient to allege fraud under Rule 9(b) or the PSLRA, or on the availability of a statute of limitations defense.

---

3. In the declaration she submitted in opposition to the defendants' motion to dismiss the amended complaint, Smith asserts that she received a copy of the July 20, 1999 Offering Memorandum and made a decision to invest more in Nustar in reliance on it. That declaration is not, however, properly before us. *See* note 1, *ante.* In any event, no affidavits of Faulkner, Taylor, or anyone involved in the Damon Trust appear in the record presented.