James WINN, Derivatively on behalf of SCOTTISH RE GROUP LTD, Plaintiff,

v.

Glenn S. SCHAFER, Michael Austin, William Caufield–Brown, Robert M. Chmely, Jean–Claude Damerval, Michael C. French, Paul Goldean, Jeffrey P. Hughes, Norman Lamont, Hazel R. O'Leary, Defendants,

and

Scottish Re Group Ltd, Nominal Defendant.

No. 06 Civ.10170 SAS.

United States District Court, S.D. New York.

May 7, 2007.

---

**34.** *See* 4/17/07 Tr. at 26–27.

**35.** As a result, Part V of Rose's report is stricken.

Curtis V. Trinko, Jeffrey B. Silverstein, Wai K. Chan, Law Offices of Curtis V. Trinko, LLP, New York, NY, Maya Saxena, Joseph E. White III, Christopher S. Jones, Saxena White P.A., Boca Raton, FL, Peter A. Lagorio, Steven M. Taylor, Lynda C. Paris, Law Office of Peter A. Lagorio, Boston, MA, for Plaintiff.

Lyle Roberts, George Anhang, Evan M. Rosen, LeBoeuf, Lamb, Greene & MacRae LLP, Washington, D.C., for Nominal Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This is a shareholder derivative action brought by James Winn ("plaintiff") on behalf of Scottish Re Group Ltd. ("Scottish Re" or the "Company") against certain of Scottish Re's officers and directors for breach of fiduciary duties arising out of alleged misrepresentations as to the Company's business and false financial reports in violation of United States securities laws. Scottish Re, the nominal defendant in this action, moved to dismiss plaintiff's Verified Shareholders' Derivative Complaint (the "Complaint") on the ground that plaintiff lacks standing to bring this derivative action. For the reasons discussed below, Scottish Re's motion is granted and the Complaint is dismissed without prejudice.

## I. BACKGROUND

### A. Facts

Scottish Re is an international reinsurance company incorporated in the Cayman Islands. Plaintiff is a shareholder of Scottish Re. Defendants are comprised of certain of Scottish Re's officers and directors (the "Individual Defendants"). In the Complaint, plaintiff alleges that the Individual Defendants breached their fiduciary duties arising out of the same conduct that is the subject of a consolidated securities action pending before this Court. Because the details of the underlying conduct are not material to this motion to dismiss for lack of standing, I shall only briefly summarize the allegations in the Complaint.[1]

From February 17, 2005 through July 28, 2006, the Individual Defendants caused Scottish Re to issue press releases and financial reports that plaintiff alleges were materially misleading. Specifically, during that period, the Individual Defendants reported hundreds of millions of dollars in deferred tax assets in Scottish Re's financial statements and certified the Company's compliance with GAAP, which sets standards for maintaining deferred tax assets on a company's balance sheet—all of which plaintiff alleges was illegal and a breach of fiduciary duty.

On July 31, 2006, however, the Company announced that it would suffer a net operating loss of approximately $130 million for the second quarter ended June 30, 2006, due principally to an unexpected $112 mil-

---

1. Plaintiff devotes eighteen of its thirty-eight-page Complaint to quoting in full Scottish Re's various press releases and financial reports made throughout the course of over a year. Neither plaintiff nor Scottish Re aided the Court by providing a summary of the allegations in the memoranda of law.

lion tax valuation allowance on deferred tax assets. The Company also announced at the same time the resignation of Scottish Re's CEO, Scott Willkomm.

Immediately following these announcements, the price of Scottish Re stock declined by seventy-five percent on high trading volume. Rating agencies also immediately downgraded the credit rating of Scottish Re from A- to BBB+, which placed the Company's ability to conduct its business in serious jeopardy.

### B. Procedural History

Beginning in August 2006, a series of putative securities class actions were filed against Scottish Re and certain individual defendants. In October 2006, this Court consolidated the cases and appointed a lead plaintiff and lead counsel. The lead plaintiff subsequently filed a consolidated class action complaint alleging securities law violations by Scottish Re and various other defendants, including current and former officers and directors of the Company arising out of misrepresentations concerning the Company's deferred tax assets and internal controls.

On or about October 19, 2006, this putative derivative action was filed, alleging much of the same misconduct as alleged in the securities action. On January 8, 2007, Scottish Re moved to dismiss the Complaint for lack of standing.

## II. LEGAL STANDARD

### A. Choice of Law

■ This Court has subject matter jurisdiction over this case under section 1332 of title 28 of the United State Code based on diversity of citizenship and an amount in controversy that exceeds seventy-five thousand dollars. In diversity actions, federal courts apply the substantive law as determined by the choice of law rules of the forum state.[2] New York choice of law rules apply the internal affairs doctrine, which dictates that the law of the state of incorporation governs the adjudication of a corporation's " 'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors."[3] The parties agree that, because Scottish Re was incorporated in the Cayman Islands, Cayman Islands law should govern plaintiff's claims of breach of fiduciary duty.[4] Where the parties agree to the application of a certain forum's law, "their consent concludes the choice of law inquiry."[5] In any event, under New York choice of law rules, Cayman Islands law applies.

■ There is also no dispute that where Cayman Islands law is silent, Cayman Islands courts look primarily to English common law for guidance.[6] Because Cayman Islands law is silent in the area of shareholder derivative actions, English common law provides the relevant applicable law in this case.[7] Finally, although

**2.** *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997). *See also Solow v. Stone*, 994 F.Supp. 173, 177 (S.D.N.Y.1998).

**3.** *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir.1980). *Accord Seybold v. Groenink*, No. 06 Civ. 772, 2007 WL 737502, at *5 (S.D.N.Y. Mar. 12, 2007); *Solow*, 994 F.Supp. at 177.

**4.** *See* Memorandum of Law in Support of Nominal Defendants Scottish Re Group Ltd's

Motion to Dismiss Plaintiff's Verified Shareholders' Derivative Complaint Pursuant to Rule 12(b)(1) ("Scottish Re Mem.") at 4; Derivative Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 3.

**5.** *American Fuel*, 122 F.3d at 134.

**6.** *See* Scottish Re Mem. at 4–5; Pl. Mem. at 3.

**7.** *See* Declaration of Aristos Galatopoulos (Cayman Islands attorney) ¶¶ 6–7.

Cayman Islands and English substantive law applies in this action, federal law governs procedural issues.[8]

### B. Motion to Dismiss

#### 1. In General

##### a. 12(b)(1)

▆▆▆ Rule 12(b)(1) provides for the dismissal of a claim when the federal court "lack[s] . . . jurisdiction over the subject matter." Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.[9] "A court must decide a 12(b)(1) motion before other motions to dismiss."[10]

▆▆▆ In considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume the truth of the material factual allegations contained in a complaint.[11] However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[12] In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[13]

##### b. 12(b)(6)

A court may not dismiss an action pursuant to Rule 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[14] The task of the court is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[15] When deciding a motion to dismiss under Rule 12(b)(6), courts "accept all factual

---

8. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). *See also Hogan v. Wal–Mart Stores, Inc.* 167 F.3d 781, 783 (2d Cir.1999) ("Defendant is correct that we must apply New York 'substantive' law to this diversity case. In matters of 'procedure,' however, federal law governs." (citing *Gasperini*, 518 U.S. at 427, 116 S.Ct. 2211, and *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938))).

9. *See Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir.2002). *See also Goonewardena v. New York*, 475 F.Supp.2d 310, 321 (S.D.N.Y.2007) ("[T]he burden of demonstrating that the court has subject matter jurisdiction over the case falls on the plaintiff as it is the plaintiff who seeks to invoke the court's jurisdiction.").

10. *Integrated Utils. Inc. v. United States*, No. 96 Civ. 8983, 1997 WL 529007, at *2 (S.D.N.Y. Aug.26, 1997). *Accord Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accom- panying defenses and objections become moot and do not need to be determined." (quotation omitted)).

11. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir.2004)).

12. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)).

13. *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir.1999).

14. *Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir.2006) (quoting *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir.2005)). *Accord Jones v. Bock*, —— U.S. ——, ——, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

15. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir.2004) (quotation omitted).

allegations as true and draw all reasonable inferences in plaintiff's favor."[16] "[W]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."[17] "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[18] Although the plaintiff's allegations are taken as true, "the claim may still fail as a matter of law if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible."[19]

### 2. Motion to Dismiss for Lack of Standing to Bring a Derivative Action

Under English law, whether Winn is a proper plaintiff to bring suit on behalf of Scottish Re is a question of standing.[20] The case law, however, is unclear as to whether standing to bring a derivative action is analyzed under Rule 12(b)(1) or 12(b)(6). In *In re Tyco International Ltd.*, the court analyzed the motion to dismiss for lack of standing under Rule 12(b)(1) because "American courts ... generally view standing as a component of subject matter jurisdiction."[21] In *Seghers*

*v. Thompson*, by contrast, the court applied, without discussion, the Rule 12(b)(6) standard.[22] Although I tend to agree with the *Tyco* court on this point, the distinction between 12(b)(1) and 12(b)(6) is immaterial in this case because the Court is not required to make any jurisdictional findings of fact in reaching its determination as to plaintiff's standing to bring this action. Plaintiff's Complaint must be dismissed under either Rule.

### 3. Leave to Replead

Whether to permit a plaintiff to amend his pleadings is a matter committed to the Court's "sound discretion."[23] Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[24] Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."[25] Leave to replead should be denied, however, where the proposed amendment would be futile, if there is undue delay, bad faith, or dilatory motive, or where the opposing party would suffer undue prejudice.[26] Leave to amend "will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim."[27]

---

**16.** *Ofori–Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir.2006).

**17.** *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 344 (2d Cir.2006) (quotation omitted).

**18.** *Faulkner*, 463 F.3d at 134.

**19.** *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F.Supp.2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir.2006)).

**20.** *See In re Tyco Int'l, Ltd.*, 340 F.Supp.2d 94, 96–97 (D.N.H.2004).

**21.** *Id.* at 97.

**22.** *See Seghers v. Thompson*, No. 06 Civ. 308, 2006 WL 2807203, at *1 (S.D.N.Y. Sept. 27, 2006).

**23.** *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007).

**24.** Fed.R.Civ.P. 15(a).

**25.** *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991).

**26.** *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002). *See also Cortec Indus.*, 949 F.2d at 48 ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

**27.** *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001).

## C. Standing in Derivative Actions [28]

Under English law, derivative actions are governed by the rule in *Foss v. Harbottle ("Foss")*.[29] That rule provides that derivative claims are owned and controlled by the company, not its shareholders, and that a shareholder is not permitted to bring a derivative action on behalf of that company.[30] There are four recognized exceptions to the rule in *Foss* that would permit a shareholder to bring a derivative action: (1) if the conduct infringed on the shareholder's personal rights; (2) if the conduct would require a special majority to ratify; (3) if the conduct qualifies as a "fraud on the minority"; or (4) if the conduct consists of *ultra vires* acts.[31] There is no dispute that the first and second exceptions are not at issue in this case.

### 1. Fraud on the Minority

In order to invoke the fraud on the minority exception, the shareholder derivative plaintiff must plead and prove each of the following: *first*, the "alleged wrongdoers must have 'control' over a majority of the stock with voting rights," and *second*, those wrongdoers "must have committed 'fraud.' "[32] "[A] corporation's board of directors will be deemed to have control of a majority of the corporation's voting shares for purposes of the fraud on

**28.** Scottish Re has submitted in the form of a declaration the opinion of an English law expert, Timothy James House, a solicitor and partner at Allen & Overy LLP in London, England ("House Declaration"). Plaintiff has not submitted any expert testimony. Plaintiff objects to the court's consideration of the House Declaration, arguing that a foreign law expert may not opine as to the "ultimate application of the (foreign) law to the facts of the case." Pl. Mem. at 3 (citing *Krish v. Balasubramaniam*, No. 1:06–CV–01030, 2006 WL 2884794 (E.D.Cal. Oct.10, 2006)). Under Rule 44.1, however, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. A court may thus consider a foreign law expert's opinion even on ultimate legal conclusions. *See* Fed.R.Civ.P. 44.1 Advisory Committee Note (noting that the rule was designed to avoid the fact that the ordinary rules of evidence "have in the past prevented examination of material which could have provided a proper basis for the determination. The new rule permits consideration by the court of any relevant material, including testimony, without regard to its admissibility under Rule 43 [and thus, the Federal Rules of Evidence]."). A court, however, is not required to consider or follow that opinion, and indeed is permitted to conduct its own research into the foreign law. *See id.* (noting that under the rule, "the court is not limited by material presented by the parties;

it may engage in its own research and consider any relevant material thus found"). While I have considered the House Declaration, I have independently reached the legal conclusions herein.

**29.** 2 Hare 461 (Eng.1843).

**30.** *See id. See also Seghers*, 2006 WL 2807203, at *4 (applying *Foss* ); *Tyco*, 340 F.Supp.2d at 98 (same). There is also a related rule, which states that a shareholder may not bring a derivative claim to complain of an irregularity (as distinct from an illegality) if it can be cured by a shareholder vote. *See, e.g., Prudential Assurance Co. Ltd. v. Newman Indus. Ltd. (C.A.)*, [1981] Chapter 5 (Eng.1979). The acts complained of here are alleged to be illegalities, not irregularities; thus, this related rule is not at issue.

**31.** *Tyco*, 340 F.Supp.2d at 98. The *Tyco* court noted that there has been some suggestion that the exceptions are not exceptions at all, but rather examples of conduct on which a derivative action may be brought under the related general rule, *see supra* n. 30, namely, conduct that could not be ratified by a simple majority, or, in the case of the first exception, an example of conduct that gives rise to an individual action as opposed to a derivative action. *See id.* Like the *Tyco* court, however, I will "follow the conventional approach and analyze them as exceptions." *Id.*

**32.** *Id.*

the minority exception if the evidence demonstrates that it has acquired *de facto* control."[33] "Fraud" as interpreted under English law in this context differs from the American definition of fraud insofar as English law requires that there be self-dealing by the alleged wrongdoers.[34] "[F]raud is not present unless the alleged wrong-doer has benefitted at the company's expense as a result of his misconduct."[35]

### 2. *Ultra Vires*

"[W]hen a shareholder seeks to bring a derivative action to recover damages for past *ultra vires* acts, the share-holder must demonstrate that the case qualifies under the fraud on the minority exception."[36] Thus, the two exceptions collapse into one where the allegations relate only to past acts.

## III. DISCUSSION

Two recent district court cases have squarely addressed the issues raised in this motion. In October 2004, in *Tyco,* the District of New Hampshire dismissed a shareholder derivative complaint for lack of standing under English law, holding that the plaintiff "failed to demonstrate that her case comes within an exception to the rule in *Foss v. Harbottle.*"[37] Likewise, in September 2006, in *Seghers,* this Court dismissed a shareholder derivative complaint for lack of standing under English law, holding that the "derivative claims are

precluded because the proper plaintiff for a wrong done to [a] company is the company itself" under the rule in *Foss* to which no exception could be applied.[38]

### A. Standing

Scottish Re argues that plaintiff lacks standing here because he does not fall within any of the *Foss* exceptions. Plaintiff counters that he need not meet any of the exceptions because he has standing under the *Foss* rule itself. Specifically, plaintiff argues that because the alleged misconduct could not have been ratified by a shareholder vote, plaintiff's suit is expressly permitted under the rule. Plaintiff is relying not on the general *Foss* rule, but on the related rule that share-holder derivative actions may not be maintained to challenge irregularities that may be ratified by a shareholder vote. Plaintiff argues that the inverse of that rule is also true—that whenever the alleged misconduct cannot be ratified by a shareholder vote, a shareholder derivative action may be brought. However, that is not a correct statement of English law. Even in cases involving alleged illegalities that cannot be ratified by a shareholder vote, a plaintiff still must demonstrate that he meets the specific requirements of one of the well-established *Foss* exceptions in order to have standing to bring suit.[39]

---

**33.** *Id.* at 99.

**34.** *See Seghers,* 2006 WL 2807203, at *4; *Tyco,* 340 F.Supp.2d at 99.

**35.** *Tyco,* 340 F.Supp.2d at 99 (citing English and Bermuda case law).

**36.** *Id.* at 102.

**37.** *Id.* at 103.

**38.** *Seghers,* 2006 WL 2807203, at *4 (quotation omitted).

**39.** As mentioned above, only two of the four exceptions are relevant to this case, the fraud on the minority exception and the *ultra vires* exception. There has been some discussion in the case law of a "fifth" exception for cases in which the interests of justice require a derivative action to proceed. *See, e.g., Tyco,* 340 F.Supp.2d at 102. Because neither party has raised that issue, however, it requires no further discussion.

### 1. Fraud on the Minority

 Other than a bald assertion of unjust enrichment in part through "illegal insider stock sales," [40] plaintiff does not allege that any (or which) of the Individual Defendants are shareholders of the Company. Moreover, the Complaint fails to allege that these defendants hold a controlling number of the company's shares or that they exercise *de facto* control over those shares. Indeed, plaintiff's own allegations prove the opposite. The Complaint states that "[a] majority of Scottish Re's outstanding shares are owned by U.S. investors" [41] and that "Scottish Re is a publicly traded company with millions of shares outstanding ... [which] were held by thousands of shareholders located throughout the nation and abroad." [42] Thus, taking the allegations of the Complaint as true, these Individual Defendants do not hold a controlling number of the Company's shares. These allegations also belie any claim that the Individual Defendants could exercise *de facto* control over the millions of shares held by thousands of unidentifiable shareholders. [43] Plaintiff's allegations that the Individual Defendants control the Company itself are inapposite.

Nor does plaintiff allege conduct sufficient to establish the requisite self-dealing in order to invoke the fraud on the minority exception. Plaintiff alleges that the Individual Defendants "receive substantial salaries, bonus payments, benefits, and other emoluments by virtue of their membership on the Board and their control of Scottish Re. They have thus benefitted from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof...." [44] Those allegations, however, are precisely the type of allegations that were found to be insufficient in *Tyco* [45] and which are consistently found to be insufficient to prove director self-interest in the analogous context of derivative actions applying American law. [46] Plaintiff does not allege any additional benefits that inured to the Individual Defendants "beyond the normal emoluments of office." [47] Thus, plaintiff cannot establish either of the requirements to invoke the fraud on the minority exception.

### 2. *Ultra Vires*

Plaintiff argues that the illegal acts alleged in the Complaint constitute *ultra vires* acts sufficient to overcome the proscription against shareholder derivative actions under *Foss*. The allegations of such illegal acts in the Complaint, however, all relate to past conduct. As a result, in order to invoke the *ultra vires* exception, plaintiff must meet the requirements of fraud on the minority. Because plaintiff cannot establish fraud on the minority, his attempt to resort to the *ultra vires* exception is equally unavailing. Thus, plaintiff's Complaint must be dismissed for lack of standing under *Foss*.

### B. Leave to Replead

Plaintiff neglected to request leave to replead in the event his Complaint is dis-

---

**40.** Complaint ("Compl.") ¶ 74.

**41.** *Id.* ¶ 8.

**42.** *Id.* ¶ 52(a).

**43.** *See id.* ¶ 52(b) and (c) (stating that even "assuming all shareholders could be individually identified," it would be "impossible" for plaintiff to track them down to make a demand).

**44.** *Id.* ¶ 51(e).

**45.** *See Tyco*, 340 F.Supp.2d at 100.

**46.** *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984).

**47.** *Tyco*, 340 F.Supp.2d at 100 n. 7.

missed. Plaintiff neglected to do so even in the face of Scottish Re's argument in its opening memorandum that leave should be denied if requested.[48] As stated above, however, "[it] is the usual practice upon granting a motion to dismiss to allow leave to replead."[49] Thus, despite plaintiff's negligence, plaintiff may replead within twenty days of this Opinion and Order. However, no amended complaint should be filed unless plaintiff and his counsel reasonably believe that the deficiencies identified in this Opinion can be addressed.

## IV. CONCLUSION

For the reasons discussed above, Scottish Re's motion to dismiss is granted in its entirety. The Complaint is dismissed without prejudice. Plaintiff may replead within twenty days of the date of this Opinion and Order. The Clerk of the Court is directed to close this motion [No. 5 on the Docket Sheet].

SO ORDERED.

---

**48.** *See* Scottish Re Mem. at 8.

**49.** *Cortec Indus.,* 949 F.2d at 48.