RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0066p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MEDIACOM SOUTHEAST LLC,
               *Plaintiff-Appellant,*

     *v.*

No. 10-6117

BELLSOUTH TELECOMMUNICATIONS, INC.
d/b/a AT&T Kentucky,
               *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 09-00214—Thomas B. Russell, District Judge.

Argued: October 6, 2011

Decided and Filed: March 2, 2012

Before: BOGGS and STRANCH, Circuit Judges; and CARR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Laurence J. Zielke, ZIELKE LAW FIRM PLLC, Louisville, Kentucky, for Appellant. Geoffrey M. Klineberg, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellee. **ON BRIEF:** Laurence J. Zielke, ZIELKE LAW FIRM PLLC, Louisville, Kentucky, for Appellant. Geoffrey M. Klineberg, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., Philip W. Collier, Michael E. Kleinert, STITES & HARBISON, PLLC, Louisville, Kentucky, Mark R. Overstreet, STITES & HARBISON, PLLC, Frankfort, Kentucky, Mary K. Keyer, AT&T KENTUCKY, Louisville, Kentucky, for Appellee.

_____

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

————————————

**OPINION**

————————————

BOGGS, Circuit Judge.  In 2009, AT&T sought to introduce a video service in Hopkinsville, Kentucky, relying on authority provided by its perpetual, Commonwealth-wide, telephone franchise granted in 1886. The City of Hopkinsville sued, claiming the telephone franchise did not allow AT&T to offer such services over its telephone wires. After Hopkinsville and AT&T settled, Mediacom, an incumbent cable provider in Hopkinsville, intervened and asserted that AT&T was required under the Kentucky Constitution and local law to obtain a new cable franchise. The district court granted AT&T's motion to dismiss under Fed R. Civ. P. 12(b)(6), finding that as a matter of law, AT&T's franchise permitted it to offer the service.

The district court prematurely reached the question of law, and improperly dismissed the case in the absence of a sufficient factual record. Prior to resolving the legal question, the district court must first determine whether the video service is more analogous to a one-way television service, or a two-way telephone service. We therefore reverse and remand.

**I**

In 1886, Kentucky granted the predecessor-in-interest of BellSouth Telecommunications, Inc. d/b/a AT&T Kentucky ("AT&T") a perpetual, Commonwealth-wide, telephone franchise, giving it the right to "purchase, construct, maintain and operate, within this State and elsewhere, telephone lines, exchanges and systems, and to conduct all the business incident and pertaining thereto," and to "construct, equip and maintain telephone lines along, over or under the highways, streets and alleys, and across any water-course within this Commonwealth, so as not to obstruct the same." 1886 Ky. Acts ch. 511, §§ 4-5. Based on this franchise, in 2009, AT&T sought to introduce video delivery as part of its "U-verse" package for homes in Hopkinsville, and throughout the Commonwealth.

On December 16, 2009, the City of Hopkinsville and the Kentucky League of Cities filed a complaint against AT&T in state court, seeking a declaration that AT&T's 1886 franchise did not permit it to offer the U-verse video service. The complaint alleged that AT&T needed to obtain a separate cable franchise from a municipality before offering such services in that city. AT&T removed the case to the United States District Court for the Western District of Kentucky. On January 11, 2010, AT&T and Hopkinsville entered into a settlement agreement, and stipulated that AT&T could provide video programming without publicly bidding for a cable franchise—a process ostensibly required by §§163-164 of the Kentucky Constitution.[1] Hopkinsville and AT&T further stipulated that the suit should be dismissed with prejudice. Finally, Hopkinsville "recognized that AT&T has an existing statewide franchise that permitted access to public rights-of-way and did not require an additional franchise to provide U-verse."

Following the dismissal, Mediacom Southeast LLC ("Mediacom") filed an intervening complaint, seeking the same declaration Hopkinsville originally sought—that AT&T's 1886 franchise did not permit it to use its existing access to rights-of-way to offer U-verse video service, and that AT&T must obtain a cable television franchise from Hopkinsville. AT&T filed a motion to dismiss Mediacom's amended intervening complaint, arguing that AT&T was not required to obtain a new license prior to offering U-verse video service because this service fell within the scope of its existing Commonwealth-wide telephone franchise.

The district court issued a six-page memorandum granting AT&T's motion to dismiss, finding that AT&T's license permitted it to offer video services. Memorandum Opinion and Order ("Mem. Op."). The court "afford[ed] great weight" to, and "agree[d]" with an opinion issued two years earlier by the Kentucky Attorney General, who had

---

[1]Section 163 of the Kentucky Constitution requires that all public utilities must first obtain "the consent of the proper legislative bodies or boards of such city or town" through a franchise before erecting "poles, posts or other apparatus" on public streets. Section 164 limits the award of these franchise only after "due advertisement, receiv[ing] bids therefor publicly, and award[ing] the same to the highest and best bidder." AT&T's perpetual franchise was granted in 1886, prior to the enactment of the Kentucky Constitution in 1891.

concluded that AT&T's perpetual license permitted it to "provide IP [internet protocol] video services within its existing rights-of-way without securing additional authorizations." Mem. Op. at 5 (citing Opinion of the Attorney General, OAG 08-007, 2008 Ky. AG LEXIS 7, at *5 (Aug. 6, 2008)).

Citing the Attorney General's opinion—which in turn cited opinions of the Supreme Courts of Ohio and Mississippi from 1949 and 1956, respectively—the district court reasoned that AT&T need not obtain a new cable franchise. First, the court found that "[t]he transmission of IP video services along AT&T Kentucky's existing facilities 'is merely an advancement or improvement in the art of telegraphy and telephony.'" *Ibid.* (quoting *Ohio Tel. & Tel. Co. v. Steen*, 85 N.E.2d 579, 580 (Ohio 1949)). Second "IP video 'is but one of many scientific achievements . . . which employs electrical impulses in the transmission process.'" *Ibid.* (quoting *Ball v. Am. Tel. & Tel. Co.*, 86 So. 2d 42, 45 (Miss. 1956)) (ellipsis in original). Third, "[t]o require AT&T Kentucky to secure a new franchise 'for every new device that employs the use of electrical impulses . . . would lead to absurd and unreasonable results.'" *Ibid.* (quoting *Ball*, 86 So. 2d at 45). The court, in granting the motion to dismiss, held that "as a matter of law . . . AT&T Kentucky's existing franchise permits it to use its current facilities to transmit IP video services to customers in Hopkinsville, as outlined." *Id.* at 5-6. Mediacom filed a timely appeal following the court's memorandum and opinion.

The district court dismissed Mediacom's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On appeal, this court reviews *de novo* a dismissal pursuant to Rule 12(b)(6). *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451-52 (6th Cir. 2003)).

**II**

The district court made two errors that warrant reversal. First, the court failed to apply the appropriate standard of review for a motion to dismiss, improperly assigning the burden of proof to the non-moving party, Mediacom. Second, the court relied on self-serving facts written by AT&T in a stipulated agreement—facts that conflicted with

the well-pleaded facts in the complaint—to make findings about the nature of the U-verse service, and its applicability to AT&T's telephone franchise.

**A**

Even under the heightened pleading standards of *Iqbal* and *Twombly*, the district court improperly dismissed the complaint. Plaintiff's complaint does not consist of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The factual allegations in the complaint do "raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The district court stated that Mediacom's "claim" turns on a single question—"whether the transmission of IP video signals is outside the scope of AT&T Kentucky's existing franchise." Mem. Op. at 4. "If the transmission of IP video signals is within the scope of AT&T Kentucky's existing franchise, then Mediacom's Amended Complaint must be dismissed." This very well may be the proper question of law on a motion for summary judgment—assuming there are no genuine issues of material fact—but it is not the proper inquiry for a motion to dismiss. At this stage, the single question is whether plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The answer to that question is yes.

Further, the district court stated that "Mediacom's contention that AT&T Kentucky requires a separate franchise to offer its IP video service [was] unpersuasive." The court improperly placed the burden of proof on the plaintiff. On a motion to dismiss, AT&T, the moving party, bore the burden, not the non-moving party, Mediacom.

**B**

The court made factual findings based on the settlement agreement entered into between AT&T and Hopkinsville. A district court is not permitted to consider matters beyond the complaint. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). To do so would convert the motion to dismiss into a motion for summary judgment. *Ibid.* The settlement agreement was not attached to the complaint, but was attached to the plaintiff's motion to intervene and referred to in the complaint. Because the agreement "appear[ed] in the record," and was "referred to in the complaint" the "court may consider" it "so long as [it is] central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Here, the district court's reliance on the agreement was improper—the facts in the complaint directly conflict with the facts in the agreement. U-verse, as described in Mediacom's complaint, "allow[s] subscribers to select the video programming offered by television channels and viewed on a television in the same manner as Mediacom's subscribers select video programming offered by television channels and viewed on a television." Further, U-verse "is [a] *one-way* transmission to subscribers of video programming allowing subscriber interaction only for the selection or use of such video programming; thus, it fits squarely within the definition of cable services under Hopkinsville's Ordinance." *Ibid.* (emphasis added).[2] In contrast, the court accepted the statements in the agreement that the "video component" of U-verse "is a switched, *two-way*, point-to-point and interactive service ('IP-enabled Video Service')." Mem. Op. at 3 (emphasis added).

The crux of the court's holding—that "as a matter of law, that AT&T Kentucky's existing franchise permits it to use its current facilities to transmit IP video services to

---

[2]Chapter 100 of the Hopkinsville Code of Ordinances, enacted on September 23, 1997 pursuant to Kentucky Constitution §§163-164, sets forth the procedure for all providers of multi-channel video programming to follow in requesting a franchise and the requirements that each should meet. The ordinance, whose language is modeled on the Cable Act, 47 U.S.C. §522(6), defines a cable service as "the one-way transmission to subscribers of: (a) video programming; or (b) other programming service; and, (2) subscriber interaction, if any, which is required for the selection or use of the video programming or other programming service."

customers in Hopkinsville, *as outlined in the Agreement*"—is premised on factual findings in the agreement.  *Id.* at 5-6 (emphasis added).  Instead, the manner in which the U-verse service transmits video, and whether it is more analogous to a one-way television service, or a two-way telephone service, is a question of fact. It would seem improper for the district court to credit the factual recitations in the agreement—a self-serving document drafted by the defendant following a settlement with Hopkinsville—and to thus reject the well-pleaded facts in the complaint. While "documents 'integral' to the complaint" may be relied upon, "even if [they are] not attached or incorporated by reference," *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002), "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

On appeal, Mediacom adamantly disagrees with the factual contents of the settlement agreement, and its relevance to defining the nature of U-verse. As the Court noted in *Iqbal*, "[t]o survive a motion to dismiss, a *complaint* must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. at 1949 (citations omitted) (emphasis added). The district court's construction of Fed. R. Civ. P. 12(b)(6)—crediting the defendant's, rather than the plaintiff's version of facts—unduly raises the pleading standard beyond the heightened level of *Iqbal* and *Twombly*, forcing the plaintiff's well-pleaded facts to be not only plausible, but persuasive. That is not the appropriate burden at this stage of the litigation.

## C

The question of how to characterize AT&T's new video service is not as clear-cut as AT&T contends.  Is AT&T's U-verse video service a mere evolution of its two-way telephone communication services, or is it conceptually different, and more akin to one-way cable television service?

AT&T argues that it did not need new licenses to "introduce[] many new services such as facsimile transmission, videoconferencing, and broadband internet access, none

of which existed in 1886." Why should it require a new franchise for the next "evolution" in their network? Similarly, the district court queried "how could AT&T Kentucky's franchise encompass facsimile and the internet, but not IP video?" Mem. Op. at 5. Mediacom counters that faxes, videoconferences, and broadband internet access, like telephone service—the subject of the initial perpetual license—are all two-way, interactive services. That is, person A calls/faxes/emails person B, and person B can respond or likewise call/fax/email person A. The U-verse video service being offered, according to Mediacom,[3] is more akin to a one-way television service. Person A sits on a couch, and passively watches television, transmitting nothing back (other than the signal to change the channel or request programming). Is U-verse television, telephone, or something else? Mediacom argues that "both IP-based service [such as U-verse] and cable television allow a subscriber to use a remote and television set-top box to change prescheduled video programming displayed on the television screen with the push of a button." *Appellant Br.* at 11.

Further, AT&T is not in a position to deny the complexity of determining how to characterize its new video service. In a factually similar case in Connecticut—albeit decided under a different regulatory regime—AT&T conceded that "that the flow of its [U-verse] video programming will be one-way, downstream, from the network to subscribers." *Office of Consumer Counsel v. Southern New England Tel. Co. d/b/a AT&T Connecticut*, 515 F. Supp. 2d 269, 276-77 (D. Conn. 2007), *vacated as moot*, 368 F. App'x 244 (2d Cir. 2010). The court found that "while communication/signaling takes place upstream from the subscriber's set-top box to the network" when a channel is changed, "the actual video programming runs in only one direction—downstream from the network to the customer premises." *Id.* at 272.

To the extent that this new video service differs from previous communication services, the video component of U-verse may or may not fall within the rubric of AT&T's perpetual telephone franchise. However, prior to making a finding, the district

---

[3]"AT&T will transmit prescheduled video programming to subscribers in Hopkinsville. The prescheduled programming provided by AT&T will be available at the same time and on the same schedule as the programming being transmitted from the programming providers such as ESPN, CNN, CBS, HBO, etc." *Appellant Br.* at 10.

court must fully explore the nature of the new service, and how it is similar to, or different from, previously available technologies. Relying on AT&T's facts, and disregarding Mediacom's, was reversible error. Only after sufficient discovery, with an adequate factual record, can the district court make this determination.

\*     \*     \*

The line between television and telephone service was once quite concrete; it is now rather fuzzy. Today, we speak in terms of data, and packets of information transmitted back and forth along high-speed networks. Through a device with a broadband internet connection, one can watch live television programming, place telephone calls, and communicate instantly with others around the world. Balancing the requirements of restrictive franchising laws, drafted in a different era, poses a challenge for courts, as new technologies emerge that do not fit within the confines of increasingly antiquated terms like television and telephone. That inquiry, though, is for another day.

The judgment of the district court is therefore REVERSED and the case is REMANDED.