**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 14a0900n.06**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**No. 14-5155**

**FILED**
Dec 05, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN OHNEMUS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| TRAVIS THOMPSON, | ) | **EASTERN DISTRICT OF KENTUCKY** |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  MOORE and COOK, Circuit Judges; and STEEH, Senior District Judge.[*]

**GEORGE CARAM STEEH, Senior District Judge.**  In this malicious prosecution and defamation per se case, plaintiff-appellant John Ohnemus appeals the district court's grant of defendant Deputy Sheriff Travis Thompson's motion to dismiss.  For the reasons set forth below, we AFFIRM the district court's order of dismissal.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Because we are reviewing a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts set forth below are those alleged in the complaint.  Ohnemus served as president of AirFoil Aerial Systems, Inc. ("AirFoil"), a corporation for which he was also a shareholder.  AirFoil designs and manufactures remote-controlled gas and electric powered helicopters (also known as "drones") for law enforcement agencies.  Some of the drones are equipped with cameras, including those with

---

[*] The Honorable George Caram Steeh, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

thermal imaging units. In late December, 2010, Deputy Thompson contacted Ohnemus about purchasing a drone and thermal camera for the Pulaski County Sheriff's Department ("Department") before the year's end. Ohnemus sent Deputy Thompson specifications for the drone and a thermal camera known as a Forward Looking Infrared ("FLIR") camera which uses infrared radiation to create a video picture that allows pilots and drivers to steer their vehicles at night and in fog, and to identify warm objects, which allow users to find fugitives and missing persons. The Department ultimately purchased a remote controlled helicopter with a thermal imaging camera for $22,980. At the time of the sale, Ohnemus advised Deputy Thompson that other orders were ahead of his, and that there would be some delay in delivery of the products.

At some point prior to June, 2011, AirFoil delivered the drone to the Department without the camera. AirFoil ordered the FLIR camera from a third-party vendor, but the vendor would not deliver the camera until certain financing arrangements were made. While AirFoil was arranging for payment of the FLIR camera, the Department informed Ohnemus that it would not accept the camera for which it had already paid. Ohnemus spoke to Deputy Thompson in July, August, and September, 2011, and offered to substitute replacement products in lieu of the FLIR camera. Ohnemus also told Deputy Thompson that the Department could retain the drone that had already been delivered. It is unclear from the face of the complaint what response, if any, Deputy Thompson or the Department made to these overtures.

Ohnemus was contacted by a United States Marshal on February 2, 2012, and upon meeting him the next day, was arrested on a felony warrant for theft. The warrant was issued by the Pulaski County District Court based upon a criminal complaint sworn to by Deputy Thompson. Ohnemus was immediately jailed and released after posting a cash bond of $30,000. The criminal complaint

2

charged Ohnemus with "Theft by failure to make required disposition of property." That crime is defined as follows:

> (1) A person is guilty of theft by failure to make required disposition of property received when:
>
> (a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and
>
> (b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

Ky. Rev. Stat. Ann. § 514.070. On April 27, 2012, the criminal charge was dismissed pursuant to a motion by the district attorney. The Pulaski District Court entered an order on April 30, 2012, stating that the charge was dismissed "with prejudice upon the defendant paying restitution to the Pulaski County Sheriff in the amount of $22,980." On April 26, 2013, Ohnemus brought this action against Deputy Thompson for malicious prosecution and defamation per se.

## II. STANDARD OF REVIEW

We review de novo the district court's dismissal of a claim pursuant to Rule 12(b)(6). *Bright v. Gallia Cnty.,* 753 F.3d 639, 652 (6th Cir. 2014). In such a review, we must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a claim that is plausible on its face. *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009)). "'Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Id.* (quoting *Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007)). Because federal jurisdiction here is based on diversity, Kentucky substantive law applies to Ohnemus' common law claims of malicious prosecution and defamation per se. *Conlin v. Mortgage Elec. Reg. Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The

3

court reviews a district court's application of state law de novo. *Lukas v. McPeak*, 730 F.3d 635, 637-38 (6th Cir. 2013). The court first looks to authority from the Kentucky Supreme Court, and absent such precedent, should look to decisions of the state appellate courts. *Id.* at 637-38.

## III. ANALYSIS

### A. Malicious Prosecution

Under Kentucky law, a malicious prosecution claim requires that six elements be met: "'(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the [defendant], (3) the termination of such proceedings in [the plaintiff's] favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.'" *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (quoting *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)). The tort of malicious prosecution is traditionally disfavored, and litigants seeking to prevail on such claims must strictly comply with the elements of that tort. *Raine*, 621 S.W.2d at 899. The district court dismissed the malicious prosecution claim for Ohnemus' failure to allege sufficient facts to support the third element: that the criminal proceedings terminated in his favor. Specifically, the district court ruled that termination was not favorable to Ohnemus because the parties reached a compromise by which Ohnemus paid $22,980 in restitution in exchange for the dismissal of the criminal charges.

"[T]he determination of whether a termination is sufficiently favorable ultimately rests with the trial court as a matter of law, absent a factual dispute relative to the circumstances of the dismissal." *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 606 (Ky. Ct. App. 2006). In determining that the criminal proceedings did not terminate in Ohnemus' favor, the

4

district court relied on *Broaddus v. Campbell*, 911 S.W.2d 281 (Ky. Ct. App. 1995). In that case, the Kentucky Court of Appeals dismissed plaintiff's malicious prosecution claim because the criminal case was dismissed once he admitted to probable cause for the indictment. *Id.* at 284. The court concluded that the criminal case did not terminate in plaintiff's favor because "he gave up something to secure the dismissal of the charges" and the dismissal did not indicate that he was actually innocent. *Id.* The court held that "one may not elect to settle a criminal action, stipulate probable cause and maintain that the action was favorable to him on the merits." *Id.* at 285.

The termination must go to the merits of the accused's professed innocence for the dismissal to be "favorable" to him. *See Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988) (dismissal on grounds of statute of limitations defense not a termination in favor of the plaintiff because it did not address the merits of the claim). Only where dismissal indicates that the accused may be innocent of the charges, have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim. *See Davidson*, 202 S.W.3d at 605-06 (finding an issue of fact over whether termination of proceedings was favorable to the accused where criminal charges were dropped after evidence of actual innocence presented); *Raine*, 621 S.W.2d at 899-900 (dismissal of malpractice action which did not include any settlement agreement was termination in favor of accused doctors). Unlike *Davidson* and *Raine*, the dismissal of the criminal complaint here does not suggest that Ohnemus is innocent of the charges, but rather that he paid the amount he was alleged to have stolen.

In order for a termination of proceedings to be favorable to the accused, the dismissal must be one-sided and not the result of any settlement or compromise. *See Feinberg v. Townsend*,

107 S.W.3d 910, 912 (Ky. Ct. App. 2003) (legal malpractice lawsuit did not terminate in plaintiff-lawyer's favor where the case was resolved by mutual agreement leading to a settlement and not by a one-sided dismissal). Numerous courts have determined that the payment of restitution constitutes a compromise which bars a finding that the criminal proceedings terminated in favor of the accused. *See Brabham v. O'Reilly Auto., Inc.*, 438 F. Supp. 2d 680, 683 (N.D. Miss. 2006) (collecting cases), *aff'd* 274 F. App'x 373 (5th Cir. 2008). So too in this case, the dismissal was not the unilateral decision of the prosecutor to drop charges, but was the result of a mutual agreement by which Ohnemus paid $22,980, representing the full amount paid for the camera which was never delivered, in exchange for the dismissal.

The Restatement regarding malicious prosecution claims is instructive. The Restatement (Second) of Torts § 660(a) (1977) provides:

> A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if
>
>> (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused.

*Id.* Section 660(c) explains the rationale for the rule:

> Although the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor.

Restatement (Second) of Torts § 660(a) cmt. c. (1977). This case presents the situation contemplated by the Restatement as Ohnemus "bought peace" by paying the sum alleged to have been stolen in exchange for the dismissal of criminal charges.

6

Ohnemus argues that *Town of Newton v. Rumery*, 480 U.S. 386 (1987) and *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993) require the district court to scrutinize the underlying facts of the dismissal to decide the question of whether the termination could be found to be "favorable" to him. In *Rumery,* the Court held that release-dismissal agreements, by which an accused agrees not to bring a § 1983 suit in exchange for the dismissal of criminal charges, are not per se invalid, but must be evaluated to determine whether they were voluntary and thus enforceable, on a case-by-case basis. 480 U.S. at 397-98. In *Coughlen*, the Sixth Circuit, interpreting *Rumery*, held that release-dismissal agreements are not presumptively valid, and established three factors which a § 1983 defendant must prove in order to render such an agreement enforceable: "(1) the agreement was voluntary, (2) there was no evidence of prosecutorial misconduct, and (3) enforcement of the agreement will not adversely affect relevant public interests." 5 F.3d at 974. Under the reasoning of these cases, Ohnemus argues that this court must delve into the facts and circumstances surrounding the dismissal of the criminal charges here, and cannot dismiss based solely on the fact that he paid restitution. *Rumery* and *Coughlen* are distinguishable, however, as those cases involved release-dismissal agreements in the § 1983 context where constitutional claims are at stake, and where criminal charges are dropped based solely on an accused's agreement not to sue. By contrast, the instant dispute involves state law tort claims, including a claim for malicious prosecution, a cause of action which has historically been disfavored in the law. *Raine*, 621 S.W.2d at 899. In addition, Ohnemus agreed to pay substantial restitution, not merely to forego his right to file a civil complaint.

Even if the court considered facts surrounding the dismissal order, Ohnemus was not in jail at the time he decided to pay restitution, was represented by counsel, was a sophisticated

businessman, and had nearly three months to consider whether to pay restitution between the time of his arrest and the time of the dismissal of the criminal case. Under these circumstances, Ohnemus' payment of restitution in exchange for the dismissal of criminal charges constitutes a compromise on the merits which does not qualify as a termination in his favor.

Moreover, in determining whether a dismissal is a termination in favor of the accused, the court is not to consider whether the plaintiff is actually innocent of the charges, but rather, whether the dismissal of the proceedings established his innocence. Specifically, the Restatement commentary provides:

> c. *Proof of innocence not enough.* It is a necessary element of a cause of action under the rule stated in § 653 that the criminal proceedings shall have terminated in favor of the accused. Therefore, proof of the fact that he was innocent of the crime charged against him will not support an action under that Section unless his innocence has been established by the termination of the proceedings in his favor.

Restatement (Second) of Torts § 658 cmt. c (1977). The payment of restitution is inconsistent with innocence, and thus, the dismissal here does not constitute a termination in favor of Ohnemus.

The Supreme Court has explained that the requirement that the prior criminal proceeding terminate in favor of the accused serves the important policy goal of preventing parallel litigation over issues of probable cause and guilt and avoids the creation of conflicting resolutions arising out of the same or identical transactions. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Courts have "reasoned that only terminations that indicate that the accused is innocent ought to be considered favorable." *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) (internal quotation marks and citations omitted). In this case, barring Ohnemus' malicious prosecution claim serves the public policy reasons behind the "favorable termination" requirement, as it avoids the risk of inconsistent outcomes arising out of the same transactions.

8

Finally, Ohnemus argues that the court should have converted the motion to one for summary judgment, and should have deferred ruling on the motion until he completed discovery, and had the opportunity to present evidence regarding the circumstances of the payment. Deputy Thompson responds that the order of dismissal in this case sets forth Ohnemus' payment of restitution in the amount of $22,980, that this is the "final disposition" of the criminal proceedings, and no discovery is warranted to prove his innocence when he has paid restitution in exchange for the dismissal of the criminal proceedings. The district court properly considered the dismissal order which was not a matter outside the pleadings, but a public record central to his claims. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).[1] Because the law is clear that a prosecution which ends in a compromise with the accused bars a subsequent malicious prosecution action, the district court did not err in refusing to convert Deputy Thompson's motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. Where the final order of dismissal set forth the payment of restitution as its basis, no discovery would have altered the conclusion that the proceedings did *not* terminate in favor of Ohnemus. Accordingly, the district court did not err in deciding the motion under the standards of Rule 12(b)(6) and denying Ohnemus' request to allow discovery and to convert the motion into one for summary judgment.

## B.    Defamation Per Se

The district court properly dismissed Ohnemus' defamation per se claim on the grounds that Deputy Thompson's statements in court filings are entitled to absolute privilege. Ohnemus' defamation claim was based on the publication of the sworn criminal complaint filed in the public

---

[1] The dissent argues that our reliance on the court order dismissing the criminal case is improper because it "would provide a distorted view of the events at issue." However, the parties unequivocally agree that Ohnemus paid restitution of $22,980 in exchange for dismissal of the prosecution, as reflected in the court's order.

9

records of the Pulaski District Court, and on the republication of those judicial records by the news media. Under Kentucky law, as in practically all jurisdictions, "'statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry.'" *Heavrin v. Nelson*, 384 F.3d 199, 202 (6th Cir. 2004) (quoting *Schmitt v. Mann*, 163 S.W.2d 281, 283 (Ky. 1942)). Contrary to Ohnemus' argument, the statements need not be made in the courtroom for the privilege to apply. *Schmitt*, 163 S.W.2d at 283. In addition, the doctrine applies whether it is alleged that Deputy Thompson knew the charges were false and even if brought in bad faith or with actual malice. *Id.* Moreover, under Kentucky law, statements protected by absolute privilege do not lose their privilege merely because they are republished by a newspaper. *Greenfield v. Courier-Journal & Louisville Times Co.*, 283 S.W.2d 839, 842 (Ky. 1955).

Under the pleading requirements of *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level." "[N]aked assertion[s] devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). The complaint here fails to state a plausible claim for defamation per se. Ohnemus fails to assert any specific facts demonstrating that Deputy Thompson personally made any false statements to the news media outside those set forth in the public records of the District Court of Pulaski County which are entitled to absolute privilege. In fact, reading paragraphs 37 and 38 of the complaint together strongly implies the opposite: that his statements in public records were later published by the news media. Contrary to the speculative reading of the complaint by the dissent, if Ohnemus

10

is claiming that Deputy Thompson made any untrue statements outside of the public records, he simply had to say so in the complaint.

Deputy Thompson also argues that the defamation claim is time-barred, an issue not reached by the district court. Because it is clear that the doctrine of absolute privilege insulates Deputy Thompson from liability on the defamation claim, we need not address the statute of limitations defense.

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the district court's order of dismissal.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Like the district court, the majority improperly relies on materials outside of the pleadings and misapplies the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). As a result, I dissent.

In affirming dismissal of Ohnemus's malicious prosecution claim, the majority begins by impermissibly relying on a document outside of the pleadings—the court order dismissing Ohnemus's criminal case pending payment of restitution. Although the order is a public record, we generally do not consider such evidence on a motion to dismiss "[w]here the evidence captures only part of the incident and would provide a distorted view of the events at issue." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *see, e.g.*, *Mediacom Se. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012); *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). Such is the case here—Ohnemus argued that the reference to "restitution" in the order was "misnamed" and "the agreement was obtained by unfair means." R. 10 (Resp. Mot. to Dismiss at 10–11) (Page ID #105–06). The majority then compounds the problem by failing to apply *Town of Newton v. Rumery*, 480 U.S. 386 (1987), and *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), which instruct courts to scrutinize agreements to dismiss criminal charges in exchange for a criminal defendant's promise not to pursue a civil action. Even accepting the dismissal order, Ohnemus's criminal charges were dismissed with prejudice—rendering him not guilty of those charges—upon his payment of $22,980 *to the Pulaski County Sheriff*, Thompson's employer and party to a civil contract gone bad worth $22,980. *See Rumery*, 480 U.S. at 401 ("No court would knowingly permit a prosecutor to agree to accept a defendant's plea to a lesser charge in exchange for the defendant's cash payment to the police officers who arrested him") (O'Connor, J., concurring). Given this, and the "disturbing abuse of power" alleged in the complaint, R. 12 (D. Ct. Order at 7) (Page ID #129),

12

a *Rumery/Coughlen* analysis was warranted, and Ohnemus should be given the opportunity to present evidence demonstrating that any agreement was obtained through unfair means. *See Coughlen*, 5 F.3d at 974 ("[A]greements should be scrutinized closely in cases where substantial evidence supports an allegation of police misconduct, in view of the potential for abuse of release-dismissal agreements by law enforcement officials.").

The majority also mistakenly affirms dismissal of Ohnemus's defamation claim. Like the district court, the majority accepts that Ohnemus's allegation that Thompson published false statements to "third persons, both in the public records of the District Court of Pulaski County, as well as republication in the news media," R. 1 (Complaint at 7) (Page ID #7), *means only* that Thompson published the false statements in court filings and *the news media* republished those statements by reporting on the court filings. It then affirms dismissal because "Ohnemus fails to assert any specific facts" supporting any other reading. But the majority's reading turns on *its own* definition of "republished" (simply, that the news media reported on the judicial proceedings), rather than viewing the complaint "in the light most favorable" to Ohnemus and drawing all reasonable inferences in his favor as we must. *Rondigo*, *L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Indeed, "republication," a term of art, occurs "where *the defendant* edits and retransmits the defamatory material, or *distributes the defamatory material for a second time* with the goal of reaching a new audience." *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 916 (W.D. Ky. 2009) (emphasis added) (citing as examples "publishing a second edition [of] a book or periodical, editing and republishing defamatory material, or placing it in a new form") (internal quotation marks omitted); *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012), *cert. dismissed*, 133 S. Ct. 1001 (2013) ("Republishing material" means "editing and reissuing material, or placing

13

it in a new form that includes the allegedly defamatory material"). So Ohnemus has plausibly alleged that Thompson himself republished *new false statements* to the news media "with the goal of reaching a new audience." *Salyer*, 701 F. Supp. 2d at 916; *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In any event, the majority's basis for dismissal is essentially its own creation—Thompson did not develop this argument on appeal, and the district court did not rely on this as a basis for dismissing the defamation claim. R. 12 (D. Ct. Order at 5–7) (Page ID #127–29). So, at the very least, we should remand to allow Ohnemus to attempt to plead additional facts to support his defamation claim.

Based on the above, I respectfully dissent from the majority opinion approving the dismissal of the complaint under Rule 12(b)(6), and would **REVERSE** the judgment of the district court and **REMAND** for further proceedings.