NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0460n.06

Case No. 22-3100

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 16, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TERRY CASKEY, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| NATHAN FENTON, et al., | ) | |
| Defendants - Appellants. | ) | OPINION |
| | ) | |
| | ) | |

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Terry Caskey filed a complaint under 42 U.S.C. § 1983 against the City of Columbus and Officers Nathan Fenton and Charles R. Harshbarger. Caskey alleged seizure without probable cause and malicious prosecution against the officers, as well as a state law claim of malicious prosecution against the officers and the city. The district court granted summary judgment for the City of Columbus but denied summary judgment for Fenton and Harshbarger, concluding that there were genuine issues of material fact that made it improper to grant qualified immunity at the summary judgment stage. Fenton and Harshbarger appeal the denial of summary judgment on qualified immunity grounds. We affirm.

I.

On November 11, 2018, Fenton and Harshbarger ("the officers") were on patrol, driving a prisoner transport vehicle ("PTV") on the streets of Columbus, Ohio. Harshbarger was driving, with Fenton in the passenger seat. The officers spotted a blue Nissan Altima ("Altima"), license

plate HDU2365, stopping at the intersection ahead of them. The officers observed that one of the Altima's brake lights was not working. The driver did not signal to turn, but then quickly turned at the intersection. At that point, the officers flashed their lights and briefly activated their sirens "in order to conduct a traffic stop for the traffic violations of . . . Failing to Signal and . . . Motor Vehicle Lights." DE 57-1, Arrest Information Report, PageID 565. However, the vehicle did not pull over. *Id.* The Altima slowed down for the next intersection, making a right-hand turn.

The parties dispute what happened next. The officers assert that, as the Altima was turning right, they observed that the driver was "an older male, white, short hair and medium build," whom they later identified as Caskey. *Id.* However, Caskey claims that this is not possible as his roommate, Robert Taliaferro, was driving that night, not Caskey. Taliaferro is 30 years younger than Caskey, taller, and has darker hair. Caskey further argues that the officers could not have seen the driver of the car at all, given the dark night and the officers' distance from the vehicle. The dashcam footage, though grainy, shows a dark night, with the driver's seat of the Altima not visible in the footage at any point, even in the timeframe where the officers allegedly saw Caskey's features most clearly.

Next, the officers reported that the Altima "quickly accelerate[d] into the furthest left hand lane of vehicles . . . in order to flee from the officers." *Id.* However, the footage does not show any such rapid acceleration. Instead, the footage shows the Altima crossing over into the furthest left-hand lane. At this point, the officers turned off their lights and sirens to end the pursuit but continued to observe the Altima. They report that the Altima continued driving dangerously: causing another car to "slam on its brakes . . . almost caus[ing] an accident" and then speeding onto the highway at a rate of "around 90 [mph] in a 55 mph zone . . . during which there was a heavy flow of traffic." *Id.* at 566. Caskey characterizes the footage as less extreme. He argues

that the video shows the other car referenced by the officers slowing down and braking but does not show a near accident as described in the report.

After ending the pursuit, the officers looked up the vehicle information and found that the Altima was registered to Terry Caskey. They then pulled up Caskey's photograph in the Ohio Law Enforcement Gateway ("OHLEG") and determined that he was "the same older male, white, short hair and medium build they witnessed driving." DE 57-1, Arrest Information Report, PageID 565. Caskey claims that the officers lied and relied solely on the OHLEG photo to establish probable cause for his arrest. Later that night, Fenton prepared and submitted the police report, which contained a request that a Franklin County Grand Jury indict Caskey for failure to comply with an order or signal of a police officer.

The Franklin County Prosecutor's Office presented the police report to a grand jury, and the grand jury indicted Caskey. The officers did not testify before the grand jury. Instead, a police liaison testified, basing his testimony on the arrest information provided in the officers' report. After the grand jury found probable cause and indicted Caskey, the County Prosecutor's Office requested issuance of a warrant on the indictment. On Thanksgiving Day 2018, Caskey was arrested at his home by two unnamed police officers. He was incarcerated for five days and then released on his own recognizance.

Upon returning home, Caskey confronted Taliaferro about the night of November 11, 2018, and Taliaferro allegedly admitted to driving the Altima that night. Caskey recorded the conversation with Taliaferro in two videos and submitted those videos, via his attorney, to the Franklin County Prosecutor's Office. Days later, Taliaferro moved out, and he and Caskey have had no subsequent contact.

On December 17, 2018, Caskey entered a not guilty plea. Four months later, the case was dismissed due to "insufficient evidence to prove identification." DE 58-7, Entry, PageID 664. When asked in his civil deposition about any costs associated with dismissal of his case, Caskey was at first unsure about whether he had to pay any court costs and then recalled paying court costs to achieve dismissal of the case. Caskey later filed a motion to supplement the record to clarify that he erred in his deposition testimony and had not paid anything to achieve dismissal. To support this claim, he submitted his entire criminal file to demonstrate that there is no indication that he paid costs to achieve dismissal of his case.

Caskey sued Fenton and Harshbarger under 42 U.S.C. § 1983 for seizure without probable cause and malicious prosecution. He also brought a malicious prosecution claim against the officers under Ohio state law.[1]

Following discovery, both parties produced expert reports related to a central issue in the case: whether Fenton and Harshbarger could see the face of the car's driver. Caskey's expert, James Sobek, took pictures of cars at the intersection where the officers claimed they saw Caskey driving to demonstrate that a driver could not have been seen from the officers' location. He asserted that the photographs were an approximate recreation of the circumstances under which the officers claimed to have seen Caskey. Caskey also produced photos taken by a professional photographer, Jim Shively, of a Nissan Altima from approximately the distance the officers sat behind the Altima to demonstrate that the driver could not be seen. Fenton and Harshbarger's rebuttal expert, Officer David Cornute, refuted the evidence provided by Sobek, concluding that more illumination of the Altima existed than claimed by Sobek and that the scene was bright

---

[1] Caskey also sued the City of Columbus for the state law malicious prosecution claim under a *respondeat superior* theory of liability, but the district court granted summary judgment for the City and dismissed the City from the case.

enough for the officers to positively identify Caskey on November 11, 2018. Cornute also asserted that Sobek's underlying assumptions about the location of the lights on the PTV were incorrect, leading to an erroneous conclusion about what the officers could see.

Caskey moved for summary judgment to deny the officers qualified immunity and the officers moved for summary judgment to dismiss the claims based on their assertions of qualified immunity. The officers argued that they were shielded by qualified immunity because Caskey (1) failed to create a genuine issue of material fact for any constitutional rights violation and (2) produced no fact pattern similar enough for the rights alleged to be "clearly established." The district court disagreed, determining that qualified immunity would not be appropriate at this stage because, for each claim, a jury could find that Caskey's rights were violated and those rights were clearly established at the time of the violation. The district court also denied the parties' cross-motions for summary judgment because it concluded there were genuine issues of material fact that needed to be resolved by a jury.

Fenton and Harshbarger now appeal the denial of their summary judgment motion.

II.

The denial of summary judgment is not normally a final appealable order under 28 U.S.C. § 1291, but a summary judgment denial of qualified immunity is immediately appealable "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Although the district court framed its opinion as denying summary judgment because of genuine issues of material fact, "[t]he district court's characterization of the basis for its ruling is not dispositive." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 564 (6th Cir. 2013) (citation omitted). Even where the defendant tries to impermissibly rely on disputed facts on appeal, this court can ignore the defendant's attempts to dispute the facts and instead resolve any purely legal disputes. *Est. of*

*Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Therefore, this court has jurisdiction to review the legal issues at the heart of this case, even where the officers have relied on disputed facts.

"Where jurisdiction is appropriate, we review de novo the denial of summary judgment on the basis of qualified immunity." *Est. of Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (citation omitted). Summary judgment should be granted when there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When reviewing a summary judgment determination, we view the facts and reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When there is video footage of an incident, we view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Generally, when a district court denies summary judgment because there are genuine issues of material fact controlling the qualified immunity inquiry, there can be no interlocutory appeal of that factual determination. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). However, there is an outer limit to that rule. Appellate review of whether a genuine dispute of material fact exists is appropriate when the district court's determination is so contradicted by the record that it is "blatantly and demonstrably false," *see Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011) (citation omitted), and no jury could agree with it. *See Scott*, 550 U.S. at 380.

III.

The officers make both factual and legal challenges to the district court's denial of qualified immunity. Because the same factual arguments underpin all three of Caskey's claims, we begin with whether the key facts of Caskey's case are beyond the possible findings of any reasonable jury. We then address the officers' qualified immunity arguments for each claim.

A.

A defendant who invokes a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20; *Wysong v. City of Heath*, 260 F. App'x 848, 853 (6th Cir. 2008) ("[A] court of appeals, when hearing a qualified immunity case on interlocutory review, does not have jurisdiction to disagree with a district court's decision that the record contains a factual dispute that must be resolved at trial."). The only exception is when the plaintiff's version of events is so blatantly contradicted by the record, such as in a video recording, that no reasonable jury could have believed her. *Scott*, 550 U.S. at 380.

The factual question for this court is whether, given the record evidence (including the dashcam footage), Caskey's version of events is so demonstrably false that no jury could agree with him. The officers claim Caskey's allegations are mere speculation, and the district court therefore erred when determining that there was a genuine issue of material fact regarding key facts underpinning Caskey's claims. CA6 R. 20, Appellant Br., at 15, 18. These disputed facts are: first, whether the officers made a positive identification of the Altima's driver on November 11, 2018, and second, whether the officers knowingly or with reckless disregard for the truth made false statements in the report. But if Caskey's story is not blatantly contradicted by the record, then we must defer to the district court's determination that a genuine issue of material fact exists. We address these key factual allegations in turn.

First, Caskey alleges that the officers could not see the driver's seat of the Altima on the night of November 11, 2018, to positively identify the driver. Here, Caskey's version of events is not contradicted by the record. In fact, the record somewhat supports it. At all times, the officers were driving behind the Altima. The sun had set two hours before they spotted it. The officers

- 7 -

claim that they saw the driver when the Altima was making a right-hand turn, which meant that the structure of the car shrouded him in shadow and placed him even further from the officers trailing behind. Caskey's experts and the photographic recreations they produce cast significant doubt on the officers' claim that they could positively identify the person driving the Altima. Perhaps if the dashcam footage showed the face or even outline of the driver the record would directly contradict Caskey's claim that the officers could not see the driver. However, that is not the record before us. We therefore defer to the district court's determination that a genuine dispute of material fact exists as to whether Fenton and Harshbarger positively identified the driver of the Altima and, drawing the facts in the light most favorable to Caskey, assume that they could not.

Caskey's next claim is that the officers knowingly or with reckless disregard for the truth gave false information in their report. This claim is also not blatantly contradicted by the record. It is not the role of this court to determine whether the officers lied. *See Johnson*, 515 U.S. at 316-17. Instead, we evaluate whether the claim that the officers lied is wholly contradicted by the record. Because, as discussed above, it is possible that a jury could find that the officers did not actually see the face of the driver, it is possible that jurors could conclude that the officers acted with deliberate or reckless disregard for the truth regarding the driver's identity when completing their report. Furthermore, the discrepancies between the arrest report's description of the events of November 11, 2018, and the dashcam's depiction of that night could lead a jury to believe that the officers embellished the truth in multiple ways. For example, the officers reported that the Altima "quickly accelerate[d] into the furthest left hand lane of vehicles . . . in order to flee from the officers." DE 57-1, Arrest Information Report, PageID 565. However, the footage does not necessarily reflect such rapid acceleration. The officers also reported that the Altima caused another car to "slam on its brakes . . . almost caus[ing] an accident." DE 57-1, Arrest Information

Report, PageID 566. Instead, the video shows the other car slowing down and braking, but not the near accident described in the report. It is possible that a reasonable jury would disregard these observations and determine that the officers reported the events truthfully, but given the record, we cannot say that it is the only conclusion they could reach.

Caskey's version of events is not blatantly contradicted by the record. We therefore defer to the district court's determination that there exists a genuine dispute of material fact regarding these key facts and draw inferences in the light most favorable to Caskey. For purposes of determining whether Caskey's constitutional rights were violated and whether those rights were clearly established, we assume the officers could not see the driver of the Altima and made false statements in their report with either knowing or reckless disregard for the truth. With these facts settled, we now turn to his constitutional claims.

B.

Under the doctrine of qualified immunity, government officials are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant is entitled to summary judgment on qualified immunity grounds unless the facts, taken in the light most favorable to the plaintiff, would allow a reasonable juror to find that the defendant violated a constitutional right and that that right was clearly established. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

1.

We begin with the constitutional prohibition on seizure without probable cause, sometimes called "false arrest." A person's Fourth Amendment rights are violated when he or she is seized without probable cause or pursuant to a judicial determination of probable cause premised on an officer's material misrepresentations to the court. *Gregory v. City of Louisville*, 444 F.3d 725, 758

(6th Cir. 2006). When a grand jury makes a finding of probable cause, the plaintiff must show that the officers who created the report (1) "knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood" and (2) "such statements or omissions were material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (internal quotation marks and citation omitted). A constitutional violation has occurred if the falsehoods were necessary to the finding of probable cause, but not if probable cause could have been independently established. *See id.*; *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Drawing the facts in the light most favorable to Caskey, Fenton and Harshbarger created a report with false statements knowingly and deliberately or with reckless disregard for the truth. As discussed above, Caskey alleges that Fenton and Harshbarger did not see features of the driver of the Nissan Altima on November 11, 2018, and instead relied on the photo of Caskey they found in OHLEG later that evening to manufacture the claim that Caskey was the driver they had seen. If these false statements were necessary to the finding of probable cause, then Caskey has alleged a constitutional violation of seizure without probable cause.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993)). "The belief of guilt must be particularized with respect to the person to be . . . seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Determining probable cause is a "totality-of-the-circumstances approach" where we consider whether the facts and circumstances that the officers were aware of at the time were sufficient to believe that the individual committed an offense. *Sykes*, 625 F.3d at 306.

The differences in the reasonable suspicion and probable cause standards are noted in the vehicle registration context. In *Kansas v. Glover*, 140 S. Ct. 1183 (2020), the Supreme Court established that running the plates of a car and finding that the owner has a suspended license creates a "commonsense inference" that the registered owner is likely the driver and "g[ives] rise to reasonable suspicion," allowing for a traffic stop. *Id*. at 1188. The Court explained that reasonable suspicion is a "less demanding standard" than probable cause, so it can be established "with information that is different in quantity or content," such as commonsense inferences. *Id.* The Supreme Court implicitly asserts in *Glover* what seems a natural conclusion: determining the registered owner of a vehicle has committed a crime, without information confirming or negating that the owner is the driver, can be grounds for reasonable suspicion, but not for probable cause. *Cf. McClain*, 444 F.3d at 563 ("Speculation does not equate to probable cause.").

Applying the probable cause standard to Caskey's case reveals obvious deficiencies. The probable cause determination made by the grand jury was premised entirely on the officers' police report. Absent the allegedly false statement that the officers saw the driver, the only remaining fact to support probable cause is the fact that the car was registered to Caskey. But knowing that the car was registered to Caskey provides reasonable suspicion that Caskey was the driver, not probable cause that he committed a traffic violation. Because the report could not independently support a finding of probable cause without including the allegedly false statements, Caskey has shown that the officers' false statements "were material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305. Moreover, the officers agreed in their motion for summary judgment that, "[i]f Defendant Officers had not verified the identification of the driver, they know there would be no probable cause as to who was the driver." DE 58, Mot. Summ. J., PageID 635.

Drawing the facts in the light favorable to Caskey, probable cause did not exist to support his indictment and subsequent arrest.[2]

Fenton and Harshbarger raise a final challenge to Caskey's claim of seizure without probable cause regarding causation. The officers argue that they cannot be held liable for Caskey's seizure because they were not involved in the decision to seek the indictment on a warrant and were not the officers who physically arrested Caskey. They explain that the chain of causation between their report and Caskey's arrest was broken by intervening actions taken by the grand jury in indicting Caskey and the Franklin County Prosecutor's Office in seeking the indictment on a warrant, not on a summons. Although Fenton and Harshbarger wrote and submitted a police report that "respectfully request[ed] the Grand Jury to indict" Caskey, they argue that they never specifically requested that the indictment include the issuance of a warrant. According to them, the Franklin County Prosecutor's Office unilaterally decided to seek a warrant without input from either officer. Assuming as we must that the officers made a report without probable cause that led to a grand jury indictment of Caskey, we now examine whether the officers also needed to be involved in the decision to issue a warrant for Caskey's arrest to establish liability.

In law, "a man is responsible for the natural consequences of his acts." *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (Frankfurter, J., dissenting); *Jones v. City of Chicago*, 856 F.2d 985, 993

---

[2] The officers urge a finding of probable cause because police officers are often forced to make "split-second judgments" and courts must avoid substituting "personal notions of proper police procedure for the instantaneous decision of the officer at the scene." CA6 R. 20, Appellant Br., at 17-18. They contend that Caskey's experts used "controlled," "sanitized" circumstances to demonstrate that the officers could not see the Altima's driver, but that, under the threat of "potential danger," the officers' eyesight could perform more effectively. *Id.* at 20. These arguments stretch reason. Furthermore, the officers recorded their observations of the identification of the driver after the officers had ended their pursuit—not in a split-second, urgent scenario. Requiring truthful police reports without intentional or reckless falsehoods does not hold officers to an overly sanitized or purely theoretical standard.

(7th Cir. 1988) (Posner, J.). Police officers are no exception to that rule: "[T]hey cannot escape liability by pointing to the decisions of prosecutors or grand jurors . . . to confine or prosecute [the plaintiff]. They cannot hide behind the officials whom they have defrauded." *Sykes*, 625 F.3d at 317 (citing *Jones*, 856 F.2d at 994). Indeed, when a police officer makes a false or misleading statement, he "may be liable for consequences caused by reasonably foreseeable intervening forces." *Id.* at 316 (citing *Higazy v. Templeton*, 505 F.3d 161, 177 (2nd Cir. 2007)). As *Sykes* implies, decisions of prosecutors are a natural kind of "reasonably foreseeable intervening force" even after an officer hands them the reins of an investigation. "[T]he chain of causation need not be considered broken . . . if [the officer] deceived the subsequent decision maker, or could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty." *Id.* (quoting *Higazy*, 505 F.3d at 177) (alterations omitted).

A grand jury indictment resulting from a police report does not change the calculus. "Police officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an officer's own material misrepresentations to the court." *Gregory*, 444 F.3d at 758. False or misleading statements have consequences, and the officers who make them must bear responsibility. The chain of causation is not broken by "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones*, 856 F.2d at 985.

A prosecutor's decision to seek an indictment on a warrant rather than a summons runs parallel to these examples. Such a decision is reasonably foreseeable by police officers, particularly when they seek the indictment of a person whom they claim created a danger to the

public. Taking the facts as Caskey presents, the officers provided misleading, incorrect, or intentionally false information in their report, which formed the entire basis for the grand jury indictment, thereby creating an unbroken chain of causation between their misrepresentations and Caskey's arrest.

When officers knowingly, deliberately, or recklessly make false statements necessary to establish probable cause for an arrest, they are liable for seizure without probable cause under 42 U.S.C. § 1983. The record supports a finding that Fenton and Harshbarger at least recklessly made false statements that were necessary to the grand jury's finding of probable cause. The officers encouraged a grand jury indictment and knew it was possible that the indictment, if returned, could be issued on a warrant. Therefore, a reasonable jury could conclude that Fenton and Harshbarger seized Caskey without probable cause, in violation of Caskey's Fourth Amendment rights.

2.

Finding a possible constitutional violation, we turn to whether the constitutional right was "so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Bouggess v. Mattingly*, 482 F.3d 886, 894 (6th Cir. 2007) (citation omitted). Finding a right to be "clearly established" demands more than constitutional generalities. Although there are rare, "obvious" cases where a right is "clearly established" without a body of case law behind it, usually we require similar factual cases to put the officer on notice of the right. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Courts should not define clearly established law at a high level of generality, but the law does not require a case directly on point for a right to be clearly established. *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). "[J]ust as a court can

generalize too much, it can generalize too little. If it defeats the qualified-immunity analysis to define the right too broadly . . . it defeats the purpose of § 1983 to define the right too narrowly." *Hagans v. Franklin Cty. Sheriff's Off.*, 695 F.3d 505, 508-09 (6th Cir. 2012). Regardless of the standard of generality required to make seizure without probable cause "clearly established," Caskey meets it.

Officers lying about the basis for probable cause is the kind of "obvious" rights violation that does not demand a catalog of factually similar cases. "[A] reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999); *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015). It has long been the practice of this court to define the right to be free from seizure without probable cause at a high level of generality. *See, e.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) (declining to review other cases for factual similarity and finding that the right to be free from arrest without probable cause is clearly established when an officer arrests someone without probable cause); *Courtright v. City of Battle Creek*, 839 F.3d 513, 522-23 (6th Cir. 2016) (same); *D.D. v. Scheeler*, 645 F. App'x 418, 427 (6th Cir. 2016) (same). The lack of a precise factual match requirement in this context makes sense for several reasons. First, the underlying motivation for rights to be clearly established is to put officers on notice of the contours of wrongful conduct. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Asking officers to only report what they have seen, observed, or learned, and to refrain from intentionally lying or recklessly stating falsehoods to establish probable cause does not offend this principle by providing inadequate guidance. An officer does not need to be on notice of a specific kind of lie he is prohibited from telling. Additionally, "[s]ome personal liberties are so fundamental to human

dignity as to need no specific explication in our Constitution in order to ensure their protection against government invasion." *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 499 (6th Cir. 2008); *see also Mathis & Sons, Inc. v. Kentucky Transp. Cabinet*, 738 F. App'x 866, 869-70 (6th Cir. 2018) (applying this principle to a § 1983 claim of racial discrimination). Seizure without probable cause, where the seizure is effected because of deliberately or recklessly made falsehoods by government officials, is the rare, "obvious" kind of claim where the conduct is so wrong that the general rule clearly establishes the right.

Even if the law required factual similarity for seizure without probable cause, it exists here. In *Stillwagon v. City of Delaware*, we found a clearly established seizure without probable cause when a police officer in Columbus had insufficient information at the time of the arrest to support probable cause and he instead made false statements and purposeful omissions to paint a picture of felonious assault related to a road rage traffic incident-turned-fight. 747 F. App'x 361, 370 (6th Cir. 2018). This situation bears remarkable similarity to the present case where two Columbus police officers allegedly had insufficient information about the identity of the driver committing traffic violations to establish probable cause, instead making false statements to develop probable cause for the indictment of the car's registered owner. If a jury agrees with Caskey on the facts, then Fenton and Harshbarger's deliberate or reckless false statements constitute a violation of Caskey's clearly established right against seizure without probable cause as illustrated in *Stillwagon*.

Fenton and Harshbarger fail to successfully assert a different view of what must be "clearly established" to prove liability. They argue Caskey must show a case where "officers that observe an individual fleeing from them in a dangerous manner, who stopped pursuing in order to avoid harm to themselves and the community, then believed they positively identified the individual, and

- 16 -

requested an indictment, has violated that individual's rights." CA6 R. 20, Appellant Br., at 22. The officers' proposed standard fails in two ways. First, the scenario they portray does not take the facts in the light most favorable to Caskey, as required at the summary judgment stage. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Second, their requested scenario reaches a level of specificity that defies the Supreme Court's instruction that factual scenarios need not be identical to put officers on notice of the rights violation caused by their conduct. *Kisela*, 138 S.Ct. at 1152.

The officers also argue that they avoid liability because Caskey has not made "a substantial showing" that the officers made false statements recklessly or deliberately. They argue that prior cases of false arrest and malicious prosecution claims relied on stronger evidence—what they deem a "substantial showing"—that the officers had made false statements deliberately or recklessly. However, the officers misconstrue the height of this requirement. We have explained that a "substantial showing" of a deliberate or reckless falsehood requires that plaintiffs support their claims with "an offer of proof." *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). As discussed above, there is more than enough evidence here for a jury to conclude that the officers deliberately or recklessly lied in their report. Because a reasonable jury could find that the officers seized Caskey without probable cause, and that violation was "clearly established" under our precedent, we affirm the district court's denial of summary judgment.

C.

Turning to Caskey's § 1983 malicious prosecution claim, we return to qualified immunity's two-prong test and begin with the constitutional violation.

1.

The Fourth Amendment guarantees the right to be free from unjust prosecution. *Jackson v. City of Cleveland*, 925 F.3d 793, 820 (6th Cir. 2019). This separate, constitutionally cognizable

claim is "entirely distinct" from the claim of false arrest or seizure without probable cause. *Sykes*, 625 F.3d at 308 (citation omitted). The tort of malicious prosecution remedies injuries associated not with the *absence* of legal process, but with the wrongful *institution* of legal process. *Id.* There are four elements to a malicious prosecution claim under § 1983: (1) a criminal prosecution was initiated against the plaintiff and the defendant "made, influenced, or participated in the decision to prosecute"; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308-09. Despite the name, "malice" is not required to show malicious prosecution under § 1983. *Id.* at 309. Here, the third element is conceded by the officers, so we only consider the first, second, and fourth elements.

The first element of malicious prosecution "is met when an officer 'could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty' and the misconduct actually does so." *Jackson*, 925 F.3d at 820 (citing *Sykes*, 625 F.3d at 316). In a closely analogous case, this court held that an officer who made "affirmative misrepresentations and omissions in his arrest-warrant application and investigative report" which "clearly led to the Plaintiffs' arrests" had participated or influenced the decision to prosecute and could be held liable for malicious prosecution. *Sykes*, 625 F.3d at 314. In *Sykes*, subsequent acts taken by independent decisionmakers like the prosecutor's office did not alter this conclusion because the officer "reasonably could have foreseen that by providing false information to the prosecution that bore directly on whether there was probable cause to believe that the Plaintiffs committed a crime, his misconduct could result in not only the Plaintiffs' initial seizure but also their eventual incarceration." *Id.* at 314-15. Furthermore, providing false information

essential to the determination of probable cause can constitute "participating in" or "influencing" the decision to prosecute even when the officers do not testify at the grand jury hearing or at trial. *See generally, Jackson*, 925 F.3d at 825-27.

Applying the first element to Caskey's case is straightforward. We have concluded that a reasonable jury could determine that the officers gave false information in their report which was necessary to the probable cause determination by the grand jury and Caskey's subsequent arrest. We have further concluded that it would be reasonably foreseeable to a police officer that making false statements amounting to probable cause and then seeking an indictment based on those falsehoods could result in an independent decisionmaker, like the prosecutor, seeking an indictment on a warrant. Because the decision to indict on a warrant was a reasonably foreseeable outcome from the alleged misconduct and resulted in a deprivation of Caskey's liberty, the record supports a finding that Fenton and Harshbarger participated in or influenced the decision to prosecute Caskey.

Second, the record could support a finding that probable cause did not exist to prosecute Caskey. A grand jury indictment creates a presumption of probable cause for purposes of malicious prosecution. *King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017). However, that presumption is rebutted by a showing that "(1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly made false statements . . . ; (2) the false statements and evidence . . . [were] material to the ultimate prosecution of the plaintiff; and (3) the false statements . . . [did] not consist solely of grand-jury testimony or preparation for that testimony." *Id.* All three prongs are satisfied here: the record supports conclusions that (1) Fenton and Harshbarger knowingly or recklessly made false statements which were (2) necessary and material to the indictment of Caskey, as probable cause could not have existed without them, and

(3) the allegedly false statements were contained in the police report, not just in the grand jury testimony. *See id.* at 591 (explaining that false statements made in "laying the groundwork for an indictment" are more than just preparation for grand jury testimony). Thus, a reasonable jury could find there was no probable cause for Caskey's criminal prosecution.

The fourth and final element of malicious prosecution is also satisfied because the criminal proceeding was resolved in the plaintiff's favor. "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show his prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1335 (2022). Here, the officers acknowledge that, under the Supreme Court's newly articulated standard in *Thompson*, the dismissal of Caskey's case meets the definition of favorable termination.

Satisfying every factor, Caskey presented evidence to establish a constitutional violation of malicious prosecution. However, the heart of the officers' appeal on this claim is that the violation was not clearly established at the time of Caskey's arrest and prosecution and therefore should be disregarded. We take up that issue now.

2.

Although the right to be free from malicious prosecution is clearly established, it is narrow. *Coffey v. Carroll*, 933 F.3d 577, 591 (6th Cir. 2019). "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (citation and quotation marks omitted). Thus, a plaintiff must assert that an officer has participated in his prosecution by making deliberate or reckless falsehoods where the officers and the prosecutor would have lacked probable cause

absent those falsehoods. *Id.* at 654-55; *Miller v. Maddox*, 866 F.3d 386, 395-96 (6th Cir. 2017). After all, "[t]he specifics of the case only matter[] with respect to assessing the viability of the malicious prosecution claim under the standard for summary judgment, not as a means of narrowly defining the right at issue." *Jones v. Clark Cnty.*, 959 F.3d 748, 767 (6th Cir. 2020); *see also Gregory*, 444 F.3d at 749-50; *Spurlock*, 167 F.3d at 1005. Furthermore, it has been "clearly established" since before 1975 that "an officer need not testify" before a grand jury or at trial to "participate in" or "influence" the decision to prosecute. *Jackson*, 925 F.3d at 826-27.

It is clearly established that officers violate the Constitution by knowingly or recklessly making false statements that form probable cause for the plaintiff's arrest and prosecution. *Gregory*, 444 F.3d at 758-59 (finding a clearly established malicious prosecution claim where an officer made factual omissions and testified in a preliminary hearing that the plaintiff fit the suspect description given by a witness, despite the plaintiff's several physical differences). In Caskey's case, it was therefore clearly established in November 2018 that the right to be free from malicious prosecution extends to deliberate or reckless falsehoods that result in arrest and prosecution without probable cause. *See id.* This standard includes deliberate falsehoods as well as omissions and inconsistencies that evince a reckless disregard for the truth. The officers' alleged behavior reaches at least the kind of reckless disregard for the truth demonstrated in *Gregory*. This means Fenton and Harshbarger were on notice that reckless or deliberate falsehoods providing probable cause are actionable as a constitutional violation when they could reasonably and foreseeably lead to arrest and prosecution.

Finally, the officers argue that the prosecutor's dismissal of Caskey's case was not clearly established as "favorable termination" at the time of his arrest and prosecution. Newly articulated in *Thompson v. Clark,* 142 S.Ct. 1332 (2022), the modern "favorable termination" standard

requires only that the plaintiff's prosecution end without a conviction. *Id.* at 1335. However, the officers contend that this precedent is too recent to be "clearly established" at the time of the facts at issue in this case and therefore we must apply the "favorable termination" standard that existed in 2018.

The officers are correct that *Thompson* contradicts this court's approach, though nonprecedential, that existed at the time of Caskey's case. *See Ohnemus v. Thompson*, 594 F. App'x 864, 867 (6th Cir. 2014); *Jones*, 939 F.3d at 763-65 (confirming the *Ohnemus* rule and its reasoning in 2020); *see also* Restatement (Second) of Torts § 660. But the officers' argument is flawed in two ways: first, the rule in *Thompson* did not need to be "clearly established" at the time of this case for its rule to apply; and second, even under our old standard, Caskey has shown favorable termination.

The standard for favorable termination did not need to be "clearly established" at the time of the wrongful conduct in order to support a malicious prosecution claim because it does not relate to a government actor's *conduct* subject to qualified immunity protections. The requirement that a violation be "clearly established" exists to put government officials on notice of wrongful conduct and protect officers acting in discretionary roles. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). When determining whether a right is clearly established, we ask whether the law was "sufficiently clear that every reasonable official would understand what he is *doing* is unlawful." *Id.* at 589 (emphasis added, quotation marks and citation omitted). When measuring the moment when that right needed to be clearly established, we look at the state of the law "at the time of the officer's conduct." *Id.*; *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can

reasonably anticipate when their conduct may give right to liability for damages." *Reichle*, 566 U.S. at 664 (quotation marks and citation omitted).

In the context of malicious prosecution, the fourth element of "favorable termination" involves no conduct or facet of conduct by officers because any actions have already occurred by the time we consider how the prosecution concluded. It creates no additional notice for officers to describe how the legal process must terminate to give rise to a malicious prosecution claim. Buttressing this point is the question of when the element of favorable termination would have needed to be established. There is no clear answer. The favorable termination element of malicious prosecution need not be "clearly established" in order to bring a § 1983 claim.

Further, application of *Thompson* supports this view. In the wake of *Thompson*, sister-circuits have applied its new, broader standard to cases where dismissal occurred under an older, different standard, with no indication that the wrongful termination element fails to have been "clearly established" at the time of conduct. *See Coello v. DiLeo*, 43 F.4th 346, 354 (3rd Cir. 2022); *Smith v. City of Chicago*, No. 19-2725, 2022 WL 2752603 (7th Cir. July 14, 2022). Nor did the Supreme Court in *Thompson* make any indication that its new standard would fail the "clearly established" prong on remand. 142 S. Ct. at 1341.

Even if our pre-*Thompson* standard applied, the officers' argument would still fail. *Thompson* abrogated and expanded the Sixth Circuit's approach to the issue of favorable termination. Before *Thompson*, and at the time of Caskey's case, the rule (albeit nonprecedential) was that "termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable.'" *Ohnemus*, 594 F. App'x at 867. Determination of whether a termination was favorable was a legal determination to be made by the trial court, unless factual disputes surrounded the dismissal of the case. *Id.* at 866. The district court engaged in a factual inquiry to

determine whether the circumstances of a case's dismissal indicated that the plaintiff was innocent of the charges. *Id.* at 867. These circumstances included a "one-sided," "unilateral decision of the prosecutor to drop charges," *id.* at 867, or when "conviction has, in the natural course of events, become impossible or improbable." Restatement (Second) of Torts § 660(a) cmt. d; *see Ohnemus*, 594 F. App'x at 867 (relying on § 660); *Jones*, 959 F.3d at 764 (same). Furthermore, it is generally not a favorable termination if the defendant "bought peace" by paying a sum in exchange for dismissal of criminal charges as a part of a deal or compromise. *Ohnemus*, 594 F. App'x at 867.

Here, the district court (performing its analysis pre-*Thompson*) correctly determined that Caskey established a genuine dispute of material fact as to whether the prosecutor's decision to dismiss the charges was indicative of innocence. Drawing the facts in the light favorable to Caskey, the record shows the prosecutor sought dismissal due to "insufficient evidence to prove identification," and Caskey claims that he shared with a prosecutor a video of Robert Taliaferro admitting that he was the driver of the Altima on November 11, 2018. While competing evidence exists about whether Caskey paid court costs associated with dismissal, this court does not balance facts. We fulfill our role by concluding that the district court properly determined that a genuine issue of material fact existed as to whether the circumstances surrounding the dismissal of Caskey's charges were indicative of innocence and whether Caskey paid court costs.

Under the facts pled, the district court correctly denied the officers' motion for summary judgment on Caskey's § 1983 malicious prosecution claim.

IV.

Finally, we address Fenton and Harshbarger's argument concerning Caskey's state-law malicious prosecution claim. The officers argue that there is no genuine issue of material fact for each element of Caskey's Ohio malicious prosecution claim and that the prosecution was not

terminated in Caskey's favor under Ohio law. The elements of Ohio malicious prosecution overlap substantially with the elements of its constitutional counterpart. Both require an absence of probable cause and the termination of proceedings in the plaintiff's favor, but Ohio's malicious prosecution law separately demands malice in instituting the prosecution. *Trussel v. Gen. Motors Corp.*, 559 N.E.2d 732, 734 (Oh. 1990). The officers claim that Caskey has failed to create a genuine issue of material fact as to each of these three elements, but this argument is no more convincing in the state-law context than in the § 1983 context. For two of these elements, we have already shown there to be a genuine issue of material fact. The third element, malice, "may be inferred from proof of lack of probable cause," *Rogers v. Barbera*, 164 N.E.2d 162, 166 (Oh. 1960), which we have already determined a reasonable jury could find here.

The officers next argue that Caskey fails to show "favorable termination" for Ohio malicious prosecution. However, the officers agree that that the standard for "favorable termination" under Ohio law is the same as the pre-*Thompson* "favorable termination" standard in the Sixth Circuit. *See Ash v. Ash*, 651 N.E.2d 945 (Oh. 1995) ("A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent.") (citing Restatement (Second) of Torts § 660(a)). Therefore, our conclusion above that a reasonable jury could find favorable termination for Caskey under his § 1983 malicious prosecution claim applies equally to his state law claim.

Lastly, Fenton and Harshbarger suggest that the state-law violation was not "clearly established" under Ohio immunity law. However, at no point in the appellate briefs or district court record do the officers address the issue of Ohio's immunity statute, much less provide argument as to its legal application in this case. We therefore decline to address the issue here.

V.

For the foregoing reasons, we affirm the district court's denial of summary judgment for

Officers Fenton and Harshbarger on all three of Caskey's constitutional claims.